**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHRISTIAN JOHN KENDALL,

  Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

  Defendants.

Case No. 1:26-cv-04405

Judge Joan H. Lefkow

Magistrate Judge Gabriel A. Fuentes

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER [26]**

**I.  INTRODUCTION**

On June 23, 2026, the Court entered Minute Entry Order [26], directing Plaintiff to address *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, 2026 WL 1502198 (7th Cir. May 29, 2026), and to explain, for each defendant on Schedule A, "what efforts plaintiff undertook to determine that specific defendant's address and why such efforts were reasonably diligent." Plaintiff hereby addresses this question, supported by the accompanying Declaration of Yanling Jiang ("Jiang Decl.") and Exhibits A, B, and C.

**II.  LEGAL STANDARD**

The Seventh Circuit confirmed in *Kangol* that the Hague Convention prohibits email service in China where the Convention applies, but that a district court "must first determine whether the Convention applies at all." *Kangol*, 2026 WL 1502198, at *5–6. The Convention "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. When the Convention does

1

not apply, a court may authorize an alternative means of service under Federal Rule of Civil Procedure 4(f)(3), including email, so long as it comports with due process.

Whether an address is "known" turns on diligence, and the standard this District applies is conjunctive. A plaintiff must make "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address"; it is not enough to point to a listed address, because "[b]are assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location connected to the defendant, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022). Diligence is judged as of the time the plaintiff sought and effected service. *See Kangol*, 2026 WL 1502198, at *5.

Article 1 also turns on the identity of the party to be served. Under PRC law, only a defendant's registered Chinese-character legal name, or the registered Chinese-character name of the natural person to be served, has legal status for a Central Authority request. A romanized or English-fabricated platform trade name is not the defendant's legal identity, and a Request naming a defendant only in that form is, as practitioner authority explains, "assured to fail," because the executing intermediate people's court cannot reconcile a romanized identifier to a registered entity. Aaron Lukken, *Chinese company names, flawed addresses, and the high likelihood of Hague Service failure*, Hague Law Blog (Mar. 2024)[1]; *see* Aaron Lukken, *A Hague-compliant roadmap*

---

[1] Available online at https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/ (last visited August 11, 2026).

*for service on "Schedule A" defendants*, Hague Law Blog (July 2024)[2] (prescribing identification of the registered Chinese-character name and registered address before invoking the Convention).

### III. PLAINTIF'S EFFORTS AND DEFENDANT-BY-DEFENDANT SEARCH RESULTS

#### A. Methodology.

For every defendant, Plaintiff's investigation comprised: (a) cataloging the identifier and any address the marketplace or payment processor disclosed for that defendant: for the Temu defendants, the address stated on Temu's own "business license" tab; for the Amazon defendant, the seller-profile "Detailed Seller Information"; for the eBay and PayPal defendants, the seller/processor record; (b) a Google Web search and a Google Maps resolution of each disclosed address; and additional independent search on China's leading dominant native mapping platform (Baidu Maps (百度地图) and/or Amap (高德地图)) for each of the forty-three defendants that disclosed a Chinese address; (c) a search of the Tianyancha (天眼查) PRC enterprise registry by the platform seller identifier for each defendant that disclosed a Chinese address; and (d) decomposition of each platform identifier against the four elements a registered Chinese entity name must carry under the PRC State Administration for Market Regulation ("SAMR") naming rules (行政区划 administrative-region prefix, 字号 distinctive trade name, 行业表述 industry descriptor, 组织形式 organizational-form suffix). Jiang Decl. ¶¶ 4–9; Exs. A, B. The map record is therefore not dependent only on Google search results: an independent search of each of the forty-three disclosed Chinese addresses on China's own mapping platform, Baidu Maps, returned "未找到相关地点" (no relevant location found) in every case, without exception. Jiang Decl. ¶ 5;

---

[2] Available online at https://www.haguelawblog.com/2024/07/a-hague-compliant-roadmap-for-service-on-schedule-a-defendants/ (last visited August 11, 2026).

Ex. A. The registry record is likewise complete for the searched population and uniformly negative, as set out below.

### B. The addresses of the seventy-eight mainland-PRC defendants are not known.

None of the Defendants with a mainland-China address could be matched a registered Chinese-character legal entity. As previously stated, the PRC State Administration for Market Regulation governs Chinese entity name requirements. Each of the seventy-eight mainland-PRC platform identifiers is a romanized initialism (e.g., Nos. 2 "ZQYNKH," 5 "WZLPH," 37 "HAOFHU"), a lowercase storefront handle, an English-fabricated storefront alias (e.g., Nos. 9 "Sky stickers customized," 21 "AlchemyStream," 24 "SunnyNookHome"), or a Western personal name (No. 6 "Jane Wu"); none supplies a Chinese-character legal name in the four-element SAMR structure, and no platform record disclosed a Unified Social Credit Code. Jiang Decl. ¶ 6; Ex. A. This is not merely an inference from the face of the record: a search of the Tianyancha PRC enterprise registry by each seller identifier returned no registrable entity for any of the forty-three defendants that disclosed a Chinese address. Thirty-six returned no data at all, and the seven responses that returned data are coincidental keyword matches to unrelated companies such as a trademark, shareholder, email, or English-name field. For example, the search for "pra" (No. 77) surfaced *Prada Shanghai* and the Postal Savings Bank of China., and the search for "A Companion Cup" (No. 79) surfaced a cancelled Guangdong coffee company. None returned a company-name match to any defendant. Jiang Decl. ¶¶ 6–7; Ex. B. A Central Authority request naming any of these defendants in its platform form is therefore the pattern practitioner authority identifies as "assured to fail." Lukken, *Chinese company names*, *supra*. This ground alone establishes that Plaintiff cannot presently invoke the Convention against these defendants.

Independently, no platform-disclosed address could be verified to a serviceable, defendant-connected location. The diligence produced two recurring results. First, thirty-six defendants disclose no address at all. For these Defendants, the Temu "business license" tab (or, as applicable, the Amazon record) states only the country ("China") and no street, building, or unit. Ex. A (Nos. 3, 4, 8, 10, 11, 13, 18, 19, 20, 22, 23, 24, 26, 27, 28, 36, 42, 43, 45, 46, 50, 51, 52, 53, 55, 57, 60, 61, 62, 64, 66, 67, 70, 72, 75, 82). Temu and Amazon production provides only email and no address for each of the Defendants, therefore Plaintiff can only rely on the record on Defendants storefront records. For these defendants, the address is not known on the face of the record.

Second, forty-two defendants disclose addresses that fail verification on map services. Both Google Maps and Baidu Maps search results could not verify. Baidu Maps returned "未找到相关地点" (no relevant location found) for each of the forty-two disclosed Chinese addresses. Jiang Decl. ¶ 5; Ex. A. On Google Maps, each disclosed address resolved no closer than a street, lane, village, township, residential community, district, city, or postcode, and in no instance was the pled building, unit, room, stall, or workstation located; several Google captures resolved to a different city or province entirely. For example, No. 65's surfaced a wrong-province candidate in Hunan. Ex. A. The disclosures themselves bear the hallmarks of secretarial or cluster registration rather than genuine places of business. A single address is pled verbatim by unrelated storefronts — Nos. 2 and 5; Nos. 25 and 30; Nos. 39 and 40; Nos. 41, 44, and 47; and Nos. 77 and 78 — and further storefronts state immediately adjacent units of one location (Nos. 56/59, 58/81). Two addresses are expressly labeled "self-declaration" by the platform (Nos. 49, 76) and one "operator on the platform" (No. 58). Ex. A. Each address was thus ascertained but could not be verified to a serviceable, defendant-connected location, and so is "not known" within Article 1. *NBA Props.*,

549 F. Supp. 3d at 796; *Zuru*, 2022 WL 14872617, at *2. Because these addresses cannot be verified, they were *a fortiori* not known when Plaintiff effected service in May 2026.

Either ground — the absence of a registrable Chinese-character legal name, or the non-verifiability of the disclosed address — independently supports service by email under Rule 4(f)(3) as to each of the seventy-eight mainland-PRC defendants.

### C. Defendant No. 38 discloses a Hong Kong address, and Hong Kong SAR does not oppose Art. 10(a).

Defendant No. 38 discloses a Hong Kong address. Hong Kong is distinct from Mainland China for Article 10(a) purposes. Hong Kong permits service through the Article 10(a) channel, and email falls within that channel. Because Hong Kong does not oppose Article 10(a), service by email on each of these Defendants is proper under the Hague Service Convention and Rule 4(f)(3).

The Seventh Circuit's holding in *Kangol* rested on the declaration of the People's Republic of China objecting to Article 10 in its entirety. 177 F.4th at 800-01. Hong Kong is different. Although Hong Kong is a Special Administrative Region of China, China's accession on Hong Kong's behalf carried a separate declaration for the Region, and that declaration objects only to sub-paragraphs (b) and (c) of Article 10; it does not object to Article 10(a). *See* HCCH, Declaration/Reservation/Notification: China, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (last visited Aug. 6, 2026) (Hong Kong SAR declaring, as to Article 10, only with reference to "sub-paragraphs b and c"). Courts have read that declaration the same way: "Because Hong Kong appears to have objected to Article 10(b) and (c), a party's only avenue for effecting service in Hong Kong with respect to Article 10 is through 10(a)." *Home Casual Enterprise Ltd. v. Home Casual, LLC*, No. 11-cv-661-wmc, 2012 WL 13042156, at *5

(W.D. Wis. Nov. 13, 2012); accord *Willis v. Magic Power Co.*, No. 10-4275, 2011 WL 66017, at *3 (E.D. Pa. Jan. 7, 2011) (Hong Kong permits international service of process by mail under Article 10(a) because it "object[ed] only to Articles 10(b) and 10(c)"); *see also Ackourey v. Noblehouse Custom Tailors*, No. 13-cv-2319, 2013 WL 6061365, at *3 (E.D. Pa. Nov. 15, 2013) ("within the territory of Hong Kong, the Article 10(a) right to effectuate service of process by postal channels directly to persons in Hong Kong remains intact"); *see also Adidas AG v. Jerseyjj0.com*, No. 1:26-cv-21511-GAYLES, 2026 WL 828768 (S.D. Fla. Mar. 26, 2026) (authorizing service by email and website posting on an online seller believed to operate from China, including Hong Kong, and noting that Hong Kong has not objected to Article 10(a)); *see also Louis Vuitton Malletier v. Lilyhualove*, No. 25-62414-CIV, 2026 WL 1664113 (S.D. Fla. Jan. 23, 2026) (authorizing alternative service by email and web publication on Hong Kong defendants because such service was not prohibited by international agreement); *see also Shenzhen Zhiying Tech. Co. v. Hong Kong Xingtai Int'l Trade Co.*, No. C25-2263-KKE, 2026 WL 44822 (W.D. Wash. Jan. 7, 2026) (granting motion for electronic service on a Hong Kong defendant and holding that, even if the Hague Convention applied, email service on defendants located in Hong Kong was not prohibited by the Convention or any other international agreement). The objection that drove *Kangol* is therefore absent as to Hong Kong.

Article 10(a) preserves the freedom to send judicial documents through postal channels where the destination state does not object, and the Supreme Court has confirmed that in that circumstance the Convention does not prohibit the channel. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 280 (2017) (service is permissible where "the receiving state has not objected to service by mail" and "service by mail is authorized under otherwise-applicable law"). Both conditions are satisfied here: Hong Kong has not objected to Article 10(a), and Rule 4(f)(3) authorizes the Court

to direct this means. Email falls within Article 10(a). The Hague Conference's Special Commission on the Practical Operation of the Convention concluded in July 2024 that "Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination." Conclusions & Recommendations of the Special Commission on the Practical Operation of the 1965 Service Convention and Related Instruments ¶ 105 (July 2024). Both predicates are satisfied here: Rule 4(f)(3) provides the method under the law of the State of origin, and Hong Kong permits it under the law of the State of destination. Because Hong Kong permits the Article 10(a) channel and email travels within it, service by email on Defendant No. 38 is consistent with the Convention and authorized under Rule 4(f)(3).

### D. Alternative service as to Defendant Nos. 83–86 was appropriate as they disclose incomplete addresses in Indonesia, which is not a contracting party to the Hague Service Convention.

Defendant Nos. 83–86 are Indonesia-based sellers. Indonesia is not a Contracting Party to the Hague Service Convention, so the Convention does not apply to any of them by its own terms, and service may proceed under Federal Rule of Civil Procedure 4(f)(3) without regard to the Convention's channels. Furthermore, these Defendants' eBay profiles state a country of Indonesia but disclose no street, town, or province address, so the Convention would be inapplicable under Article 1 in any event as Defendants' addresses would not be known. Ex. A. Electronic service under Rule 4(f)(3) was therefore appropriate for these four Defendants, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### E. Defendant No. 92 discloses no known address under the Convention, and service by email under Rule 4(f)(3) is warranted.

Defendant No. 92 (PayPal, operating the storefront domain batesmotel.store) is associated with an account registered to an individual accountholder in Vietnam, but the account is not tethered to Vietnam or to any other single place. PayPal's subpoena response for that account discloses ten addresses across seven countries — Vietnam, China, Canada, Switzerland, Norway, Bulgaria, and the United States — and internally flags the account for Brand Risk Enforcement and as an "Intermediary/Exit" account. Ex. A. An account that PayPal itself has flagged as an intermediary pass-through, and that has shed ten different addresses across seven countries, is the paradigm case of a defendant whose address is not known.

Verification confirms the point. The account's oldest and most specific address, 36 Ngõ 257 Thanh Nhàn, Hanoi, fares no better: Google Maps, Google Web, as well as VietMap (Vietnam's leading local mapping service) redirects that house number to 46B Ngõ 257 Thanh Nhàn, a twenty-four-hour café. VietMap offers no consumer search interface through which to independently confirm the address exists at all. A search of Vietnam's national tax registry (masothue.com) for the exact name "Pham Thanh Trung" returns two records, both registered in far-southern provinces — Cà Mau and Đồng Tháp — roughly 1,500 to 1,800 kilometers from Hanoi; a similarly spelled but diacritically distinct name, "Phạm Thành Trung," does return Hanoi-area records, but Vietnamese orthography treats that as a different name, and Plaintiff does not rely on it. The account's disclosed Guangzhou address — Fengming Road No. 117, F1 Stall — is a Cainiao parcel-collection station in a logistics district, not a residence or place of business; Defendant, a Vietnamese national with no known Chinese business registration, has no demonstrated connection to a package locker in Guangzhou. The account's only linked financial instrument is a Vietcombank account, a Vietnamese bank, and discloses no Canadian or Chinese

9

bank account, credit card, or other financial instrument — notwithstanding that a Winnipeg, Canada address appears twice among the account's disclosed addresses. The remaining eight addresses carry no financial-record corroboration at all; their dispersion across seven countries is itself the signature of a forwarding or proxy account, not a residence.

A plaintiff invoking Article 1 must make reasonably diligent efforts to ascertain the defendant's address, and mere assertions about the reliability of a defendant's publicly available address do not substitute for actual diligence. *See NBA Props., Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021), *aff'd sub nom. NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022). Plaintiff has exercised exactly that diligence here — cross-platform map verification, a national tax-registry search, and a review of the account's financial records — and it has produced not a known address but the opposite: ten candidate addresses in seven countries, the two most specific of which resolve to a parcel locker and a café. No known address exists for Defendant No. 92, the Convention is accordingly inapplicable, and Plaintiff requests leave to serve this defendant by email under Rule 4(f)(3).

### F. Defendant Nos. 87 and 90 have plausible U.S.-Based Addresses, and Plaintiff will attempt to effectuate service under Rule 4(e).

Defendant Nos. 87 and 90 have PayPal accounts associated with United States addresses (San Francisco, California and South Boston, Massachusetts). Plaintiff's investigation revealed that these may be plausible addresses, suitable for service under Rule 4(e). Ex. A. Accordingly, Plaintiff does not include these Defendants in Plaintiff's pending motion for default judgment, and requests additional time to effectuate service on these Defendants.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1.      As to the seventy-eight mainland-PRC defendants, find that the Hague Convention is inapplicable under Article 1 and that service by electronic means under Rule 4(f)(3) was appropriate because (1) no disclosed address can be verified to a serviceable, defendant-connected location after reasonably diligent effort, and (2) no defendant can be matched to a registered Chinese-character legal entity capable of supporting a Central Authority request (the Tianyancha registry search returned no registrable entity for any defendant);

2.      As to Defendant No. 38, which has a Hong Kong address, find that service by electronic means under Rule 4(f)(3) was appropriate as Hong Kong SAR does not object to service by postal channels, including email, under Article 10(a) of the Hague Service Convention;

3.      As to Defendant Nos. 83–86 which have incomplete, Indonesia addresses, find that Indonesia is not a Contracting Party to the Hague Service Convention and that the Convention is also inapplicable under Article 1, and that service by electronic means under Rule 4(f)(3) was appropriate;

4.      As to Defendant No. 92, whose PayPal account discloses no known address, find that the Hague Service Convention does not apply because no known address exists, and that service by electronic means under Rule 4(f)(3) was appropriate;

5.      As to Defendant Nos. 87 and 90 which have U.S. addresses, recognize that service is governed by Rule 4(e) and permit Plaintiff to complete any domestic service the Court deems necessary.

DATED:  August 11, 2026                    Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on August 11, 2026 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt